THOMPSON, J.
 

 This is the second appeal prosecuted in this case by the defendant from an unfavorable judgment rendered in the court below.
 

 When the case was before us on the first appeal, 147 La. 1054, 86 So. 492, we observed that among the contentions ,of the defendant the first to be considered was that of payment and satisfaction of plaintiff’s demand in the manner indicated in the opinion and decree.
 

 On this question we found the evidence so conflicting and so much involved in doubt as to render it impossible to reach a satisfactory conclusion.
 

 The case was therefore remanded for additional evidence on the main issue of payment and for any other relevant evidence which the parties might desire to offer.
 

 On the second trial in the court below the former judgment was reinstated, though the presiding judge expressed some doubt as to whether the payment had been made by the delivery of drainage district bonds in the amount of $3,000.
 

 He seems to have based his second judgment on the fact that the evidence failed to establish that the bonds received by the plaintiff were given in payment and discharge of the particular obligation sued on.
 

 The suit is for compensation for professional services rendered by the plaintiff as an attorney in organizing subdrainage district C and the issuing and negotiation of bonds for drainage purposes. The liability of defendant is predicated upon an instrument signed by the plaintiff only and in the form of a receipt. It reads as follows:
 

 “New Orleans, La., December 12, 1912.
 

 “This is to certify that I have this day received from E. L. Chappuis in full for all legal as well as other services rendered to date in his favor, as well as to the Alluvial City Lands Company, Alluvian Land Company, St. Bernard Alluvial Land Company, and the Louisiana Alluvial Lands Company, $10,000 represented by one certain promissory note ,of like amount, dated December 2, 1912, due five years from date, bearing interest at the rate of six per cent, per annum, interest payable semi-annually, signed by Clinton S. Woolfolk, indorsed by the Realty Realization Company, and to which is attached one hundred shares of the capital stock of the Realty Realization Company, par value of $10,000.
 

 “For any services in preparing the subdrainage district C matters and reclamation bonds, for which I had a net credit in the books of the Alluvial City Lands Company of $5,359.30, I will accept from E. L. Chappuis the sum of $3,000 in cash, whenever the said E. L. Chappuis sells his interest in St. Bernard Alluvial Land Company, or whenever the said St. Bernard Alluvial Land Company sells its holdings; the idea being that the said $3,000 is due me, whenever the said E. L. Chappuis realizes cash money from his holdings in the St. Bernard Alluvial Land Company. It is also understood that, should I negotiate the St. Bernard Alluvial Land Company by sale, for E. L. Chappuis, he is to see to it that I am paid a cash commission of five per cent.”
 

 “[Signed] H. L. Favrot.”
 

 The defendant does not dispute the fact that he was obligated to pay the plaintiff the sum of $3,000 in the manner and upon the condition and contingency as recited in the foregoing document.
 

 His contention now as on the former hearing is that the plaintiff received payment by being allowed to retain three bonds of $1,000 each, which were issued for the drainage of subdrainage district C, and which were placed in his hands with the understanding that,
 
 *835
 
 in the event of his being so paid, the obligation sued on should be considered discharged, and, secondly, that the condition or contingency provided for in the document on which he' was to become liable had never been accomplished nor fulfilled.
 

 The evidence conclusively establishes that the plaintiff was the attorney for the Bayou Terre-aux-Boeufs drainage district; that he acted as such in organizing subdrainage district G and in matters relating to reclamation bonds for which he had a credit on the books of the Alluvial City Land Company for $5,-359.30; that he agreed to accept from the defendant $3,000 in cash in payment of the said amount whenever the defendant sold his interest in the St. Bernard Alluvial Land Company, or whenever said Company sold its holdings.
 

 It further appears beyond controversy that the plaintiff had the control and possession of the drainage bonds. He received them from the secretary of state and deposited them .with the Hibernia Bank for safe-keeping, subject to be withdrawn by him or on his order.
 

 On December 23, 1913, one year after the date of the receipt herein previously quoted, the following resolution was adopted by the drainage district:
 

 “Whereas I-I. L. Favrot was employed as special counsel for the purpose of getting out bonds in the subdrainage district C in May, 1912, and his employment was contracted for at the time with the explicit understanding that it should be paid out of the bonds, of the proceeds of the sale of the bonds of subdrainage district C, and that the legal work has all been performed and executed to the satisfaction of the board; therefore, be it resolved that the bill of H. L. Favrot for $3,000 for legal services in getting out the bonds of subdrainage district C is hereby approved and he is hereby instructed to retain bonds of subdrainage district C, to the par value of $3,000 in full payment of his services.”
 

 After the foregoing resolution was adopted, the plaintiff withdrew from the bank three bonds of $1,000 each of subdrainage district C and on April
 
 2k
 
 1914, attached them as collateral to a note executed by him to secure the sum of $3,000 borrowed from the Jefferson Savings Bank of Gretna.
 

 Thereafter these identical three bonds were surrendered to the referee in bankruptcy in the federal court of Illinois in the bankruptcy proceedings against the Jefferson Land Company of Illinois, to the end that the Jefferson Savings Bank, the holder of the bonds from Favrot, might be recognized as an unsecured and' ordinary creditor of the Jefferson Land Company, the said bonds having become worthless.
 

 It therefore appears quite conclusive that the plaintiff did receive the $3,000 of bonds under the resolution of the drainage district and did appropriate them to his own use in satisfaction of his claim for compensation for services rendered in connection with getting out the bonds of subdrainage district C.
 

 ■ On the first trial of the case the plaintiff was asked the following question:
 

 “Q. (by Mr. Fortier). I show you this document, Senator (certified copy of the resolution, referred to), and ask you if you disposed, and if you did, at what price, of these bonds of the value of $3,000, that are mentioned in this resolution ?”
 

 The answer was as follows:
 

 “It is nobody’s business whether I disposed of those bonds or not. I do not think that it is anybody’s business. This is my personal business, and has nothing to do with this case one way or the other.”
 

 It is true that further on in his testimony the plaintiff testified that he had never received from the Terre-aux-Boeufs drainage district any bonds under the terms of the resolution which has been offered in evidence by the defendant.
 

 But the evidence which we have already referred to clearly establishes that the plaintiff did receive $3,000 in bonds of subdrainage district C and made use of them in se
 
 *837
 
 curing a personal loan from the Jefferson Savings Bank. There were no separate minutes kept of the proceedings relating to said subdrainage district, but everything pertaining to the subdistrict was directed by the commissioners of the Terre-aux-Boeufs drainage district acting presumably for the subdistrict. So that the denial by the plaintiff that he had ever received any bonds from the parent district under the resolution referred to cannot be considered in the light of the evidence as a denial that he had received the bonds of the subdrainage district as authorized by the resolution mentioned.
 

 Under the express terms of the document made the basis of this suit the plaintiff’s claim of $5,359.30 was reduced to $3,000, and this amount was to be in satisfaction for any services which he had rendered in preparing the subdrainage district O matters and reclamation bonds. It does not appear that the defendant owed the plaintiff in this connection for any other services than that expressly stated. Nor does it appear that the bonds received by plaintiff and appropriated for his own benefit were so received for any other service than the services expressed in the document which he signed.
 

 The plaintiff was given the opportunity when on the witness stand to explain his receipt and disposition of the three drainage bonds, but he declined to do so. The conclusion is therefore inevitable under the showing made by the defendant; in the absence of any explanation by the plaintiff to the contrary, at a time when he was called on to do so, that the bonds were received in satisfaction of the debt sued on.
 

 The attorneys for the plaintiff in their brief complain of what they call an error on the part of the court in its former opinion in considering the services mentioned in the document sued on as being the same for which the bonds of the Bayou Terre-aux-Boeufs drainage district w.ere authorized to be given in payment.
 

 Counsel, however, have failed to point to any evidence showing that the delivery of the said bonds was for any services other than such as mentioned in the document referred to. But, to the contrary, the services stated in the document were for preparing the sub-drainage district 0 matters and reclamation bonds. The services stated in the resolution authorizing the plaintiff to take $3,000 in bonds were for getting out bonds in said sub-drainage district, and the bonds authorized to be thus turned over in payment for such services were bonds of said .subdrainage district O.
 

 The evidence introduced on the second trial in our opinion sets at rest and dispels the doubt which we entertained on the former hearing on the question of payment. The case is clearly with the defendant on that issue. This view renders-it unnecessary to consider the other defenses.
 

 The judgment appealed from is therefore reversed and set aside, and the plaintiff’s suit is dismissed, at his costs.
 

 O’NIELL, C. J„ absent.